If my interns want to come move up so they can hear better, they are free to do so. It is an invitation. Wherever you want. The seats are there. You can sit wherever you want. I think you may be having, if you're having the same difficulty I'm having hearing. No, don't do that. We'll hear the echoes. We will now hear counsel in U.S. v. Fernandez. May it please the court, my name is Nicholas Harvest and I represent the appellant Gerardo Fernandez. Your Honor, in this perjury obstruction of justice case, it was crucial to establish Mr. Fernandez's credibility before the jury as to why he did not recall the 1 minute and 57 second conversation with Counselman Soto on March 22, 2000. Eight months before his grand jury testimony. Thus, his state of mind as to why he remembered some things and didn't remember other things and his motive in testifying in the grand jury were critical issues in this case. And to support his testimony about his lack of recollection of that critical conversation, his lack of motive to mislead or lie in front of the grand jury, it was crucial to corroborate Mr. Fernandez's testimony on these issues. But I submit to you that the district court erred when the district court excluded three specific areas of critical corroborating evidence demonstrating Mr. Fernandez's lack of recollection, his lack of intent, and his lack of motive. The exclusion of this critical corroborating evidence in essence left Mr. Fernandez naked before the jury and it gutted his defense. The three pieces of evidence were the recordings that the defense sought to offer of Soto, Counselman Soto, Counselman Jackson, and Mayor Rivera shortly before the March 22nd conversation. These were the conversations among the bribe taking. Is that the throw him a bone conversation? That's precisely those series of tape recordings. And that, those tape recordings dealt with the reason to vote down Brown and Brown. And they should. Now the district court held that was hearsay, right? That is correct. She said it was both irrelevant and hearsay. Now was it hearsay? I don't believe so, Your Honor, because we, to get to that legal issue, we argued to the district court that these were adoptive admissions. That the tape recordings that we sought to offer were quoted by the government in the Soto indictment. And that appears in our motion, in our response to the government's motion in Lemonade to exclude these tapes. And they were offered at Soto's trial, tried before the same district judge. They were offered under 801D2E, right? Yeah, as co-conspirator states. As co-conspirator states. And therefore, by putting these tape recordings in the Soto indictment and quoting them and offering them in the government's case in chief, the government's vouched for the credibility of that evidence. And cases outside of this circuit that we've cited, the Morgan and Qatar case, where the government manifests belief in the substance of statements by using them to obtain an indictment here and to prove the bribery scheme in another criminal trial, the government's adopted them. They've had vouched for the credibility. And as in the Warren case. Suppose they came in. What would you have argued that they helped Mr. Fernandez? I mean, you know, let's assume that she should have let them go. That's a very important question. And these tapes show, Your Honor, that these individuals, the co-conspirators, concocted a false story telling Mr. Fernandez to look for someone to save the city money. They were going to do that. But how would that have helped his credibility when the issue was he lied before the grand jury? In two reasons. I mean, the grand jury asked him, the prosecutor asked him a series of questions. Four, I think, that's an issue. How does it help him if he were a perjurer or a liar that they didn't cut him into the deal? Two very important points. First, it directly refutes the motive of friendship and political ally that was proffered by the government, both in its opening statement and in its closing argument. In the words of the prosecutor, Mr. Fernandez lied because this friendship was too important. By omitting these tape recorders. And that was what the prosecutor told the jury? That's what the prosecutor told the jury, both in opening. And in a footnote, I have many more statements advocating this motive theory. Fernandez testified about this. He said they weren't friends. Correct. Mr. Fernandez said that we weren't close political allies and we weren't friends. And the recording doesn't say whether they're friends or not friends. But circumstantially, it shows that the so-called friends and political allies were lying behind his back to conceal and telling him a cover story that they were voting to save the city money when, in truth and fact, they were concealing their bribery scheme. So this shows that, indeed, they weren't his friends and they weren't his political allies. And directly refutes the government's motive theory. Or that they were friends but they weren't close enough that they were going to cut him in on the action. Well, that's also very important. Or that he was not part of the bribery scheme, which never was alleged. It was never alleged in the indictment. But the prosecution was very careful in its opening and closing only to say there was no charges or no allegations of bribery. They never conceded he wasn't aware and had no knowledge of the bribery scheme. And it was crucial in this case that was filled with allegations of political corruption. But he's not being charged with bribery here. Correct. This is a narrow case. It is narrow, Your Honor. But it's crucial in this case to dispel any notion that Mr. Fernandez had any knowledge of this bribery scheme. And the tapes prove that. Okay. Now, you said there were three pieces of evidence. So let's get to the other two because we're just focusing on the first. One more piece on that alone. And that deals with the government, I think, is going to assert that they really conceded that he had no knowledge. And I don't believe that the record shows that. But in the closing argument, the prosecutor said, this is absolutely shameful. If there's nothing corrupt about this call, why is Mr. Fernandez so defensive about this call? Page A790. And that shows, Your Honors, that this specter of corruption and whether Mr. Fernandez really knew what was going on was out there. And that's why we needed to get these tapes into evidence and dispel the friendship defense. Okay. What about the other two pieces of evidence, Mr. Harvis? The other pieces of evidence, Your Honor, were the tape recordings of the council meetings. I don't see what that could help them, Frank. That's why I want you to get to these other two. They show his lack of recollection of the Soto conversation because the reason to vote was to save the city money. That was an issue, why they were voting against Brown and Brown. Why the whole council meeting would be relevant? Well, at least parts of it. And we asked the district court to admit parts of it, particularly the February 20th meeting, where Mr. Fernandez was saying at the council meeting that he thought we should do various things to try to save the city money. And he also testified at trial what he was recalling in the grand jury about the reasons for votes. It was indeed that he was thinking about saving the city money, and he was indeed recalling some of these council meetings. So it was important to corroborate that point. What about the third? What's your third piece of evidence? The other piece of evidence, Your Honors, was that the district court permitted the questioning of Mr. Levy, Mr. Fernandez's attorney, during the grand jury testimony about what Mr. Levy told Mr. Fernandez about the scope of the grand jury investigation. And over my objection on attorney-client privilege, the district court overruled that line of questioning, overruled my objection and allowed the prosecutor to inquire into what Mr. Levy told him about the scope of the grand jury investigation. And what privileged information was disclosed therein? It was communications. The whole purpose of having a lawyer was to prepare his client for the grand jury testimony, and what was disclosed was the information that was imparted by the prosecutor to Mr. Levy, that is that the scope of the grand jury inquiry was related to extortion and bribery. But the prosecutor telling the lawyer what the scope of the grand jury is, that's hardly a confidential communication between attorney and client. But when it is in the context, Your Honors, of discussions between the lawyer, whose job it is to prepare his client, and as to what advice is being given in connection with the grand jury. I think for purposes of the privilege, you need to identify a communication that is sacrosanct. I think that's a confidential communication. What Mr. Levy was telling Mr. Fernandez about that conversation with the prosecutor. What did Levy tell Fernandez? According to Mr. Fernandez, he testified, all I was told was this was about bribery and corruption. So Levy tells Fernandez, the government has said this is the scope of the inquiry. And that goes to Mr. Sprague. So there you have Levy telling Fernandez something that is clearly not privileged because he got it from the government lawyer. But what he advised his client is privileged. Well, what did he advise his client? Well, he advised his client what the scope of the grand jury investigation was. Well, again, so there's perfect overlap between the Levy to Fernandez communication and the government lawyer to Levy communication. There's perfect overlap. There's no confidential attorney-client communication. I understand the Court's point. But I think the more important point is that when the district court allowed this testimony over my objection, I asked to call Mr. Levy to corroborate what Mr. Fernandez knew at the time of his testimony. Because in the prosecutor's questions to Mr. Fernandez, he challenged and suggested that Mr. Fernandez really knew more. He really knew this was all about insurance contracts and the resolutions. I would like to move you off of here. We would like to move you off of this issue. We would like to move you off. And I want to ask you a very specific question as to Application Note 7. Yes, Your Honor. What is the significant further obstruction that occurred during the prosecution of the case? Where is the district judge's finding that a significant further obstruction occurred? This is on the enhancement. On the enhancement. I believe the only argument that there could be, and I would assert there really is no significant further obstruction. But what the district court appeared to do at the prompting of the prosecutor on the last page of the sentencing was conclude that Mr. Fernandez had lied in his defense. And I believe that was the basis for the significant further obstruction. But I would assert to the court that that finding is really not supported by anything other than the jury's verdict. And that's confirmed. Let me also get you on to another question. You spend a lot of time in your brief on the ambiguity of the questions. The questions in the grand jury, I don't see any ambiguity. And what's ambiguous about a question that asks you whether Soto ever tried to influence him in his votes? If he discussed any matters related to insurance? What? I mean, those are ordinary words in the English language. How can they be ambiguous? I believe the point, Your Honor, is that the way Mr. Fernandez interpreted the conversation, and particularly 8C, which is the question about did Soto try to influence your vote. And his answer is no. If he did, I would have slapped him. Correct. And Mr. Fernandez reacted that way because he testified that he interpreted that because the series of questions leading up to that were all about bribery. And that the prosecutor was asking about some sort of unlawful or illegal influence. What difference does it make how the influence, the word influence, was interpreted, whether it was illicit influence or illicit influence? The question in 8C was only whether Soto had ever tried to influence him in any way, and the answer was no. It makes a difference because under Mr. Fernandez's interpretation, if it was illegal or improper influence, his answer is literally true. His answer is still no. Correct. But that is a literally true answer. And if the court had given the ambiguity instruction that I requested, the jury should have. Okay. Don't go there. You don't have the time. But why can't, assuming there's some confusion as to that one word, the next sentence in 8C is, the next question, did he ever discuss with you in any way any matters related to insurance brought before Passaic City Council? Answer no. So even if the question before was moderately confusing, the word influence was moderately, there's no confusion in the question that follows it. None. But the problem is we don't have special interrogatories here. The government never requested them. We don't know what the jury found. So if his question was correct with regard to question 1 in 8C, and the jury could have found if they had the ambiguity instruction that if there was ambiguity in the question, they could have found that Mr. Fernandez's interpretation was indeed reasonable and could have been guided in his state of mind by that instruction, which I believe there was a factual basis for it, and it was a correct statement of the law. So the district court erred. Thank you, Your Honor. Your red light is on. I appreciate the call. Yeah. We'll get you again in rebuttal. Good morning, Mr. Gross. Good afternoon. May it please the Court, my name is Norman Gross. Oh, you're right. And I represent the United States. I'd like to first address the issue about attorney-client privilege and whether there was any confidential communication that was disclosed through this cross-examination. And, of course, our initial argument is this is all waived because there were no objections to any of these questions. There's a good reason why there was no objection to any of these questions, because Mr. Fernandez on cross-examination helped himself in his testimony. But here's the Q&A. It's on page 56 of my brief. The prosecutor asks, he didn't tell you, meaning he, Mr. Levy, he didn't tell you it involved insurance contracts. I don't recall him telling me that. That furthers his defense. That is a series of questions that can't possibly be privileged. Can you tell the jury how much the city pays Levy's law firm? That can't be privileged. Would it be fair to say over $600,000 a year? That's not privileged. A question about if the law firm represents the city with a contract of $600,000 a year, but Mr. Levy just met with you for 10 minutes in the cafeteria. That doesn't ask for any privileged information. And then the last question, in which there's a communication from Levy to Mr. Fernandez, when you went into the grand jury, you were informed they were looking to allegations of bribery and corruption, correct? Well, that doesn't really go to a confidential communication, because there's already been testimony that the prosecutor talked to Mr. Fernandez. Mr. Gross, frankly, in my mind, that's a small part of this case, this appeal. I'd like to hear you as to why you can sustain the district court's declination to allow in evidence of the phone call between Soto, et cetera. I mean, couldn't the jury have felt that Fernandez was being set up in a way? I mean, why shouldn't that have gone in? If I were on the jury, I would have wanted to hear that. Your Honor, Judge Thompson sized up this trial based on the indictment and the defense opening. You don't size up a trial on the basis of the indictment. All the indictment does is say this is what the government is saying. But, Your Honor, the defense in this case, first of all, the indictment is just charging perjury. It's not charging Mr. Fernandez's involvement in this bribery scheme. These tapes don't say anything about whether or not Mr. Fernandez, at the time of his grand jury testimony, simply forgot about the phone call or whether, as the indictment alleged, he falsely testified that he did not have the phone call. But wouldn't the jury have felt that this guy really isn't such a bad guy? They were just trying to get him into this. I mean, isn't that relevant? Your Honor, it's not relevant whether Mr. Fernandez is a bad guy or not. That goes to sentencing. The issue that the jury has to decide. Well, it might help for jury nullification. Well, if he's offering jury nullification. Thank you very much, Your Honor. I think that's exactly what's going on here, and that's why I think that Judge Thompson, who's been around the block a couple of times, kept this stuff out, that this only went to jury nullification. I didn't know what she said. She didn't say that. She said it was a distraction. I guess that might be a euphemism for forgetting. Didn't she say it was irrelevant? She did suggest it was irrelevant, but she did say it was a distraction, and I think jury nullification is not only a distraction, but it's an improper argument to the jury. Now, the defense in this case was adamant about pushing evidence in front of the jury and making the argument that Mr. Soto, that Mr. Fernandez, was not involved in this bribery. He's not as bad as these other people on jury testimony. And he says, I didn't know about any bribery. And there was no dispute about that, Your Honor. The government, you know, conceded 12 ways to Sunday that Mr. Fernandez is not involved in this bribery. Now, did we stipulate he's not involved? Well, we couldn't exactly do that. Why? Because we frankly don't know whether or not he's involved, but we said it. Oh, the government always knows what he's involved in. Your Honor, we simply don't. And one of the reasons we didn't know in this case is because Mr. Fernandez lied in the grand jury and didn't tell us that he's having conversations with the co-conspirators about these insurance contracts, and that didn't allow us in the grand jury to probe his knowledge about who else he was talking to that we might not have a tape recording about. But the government said in its opening there is no evidence in this case that Mr. Fernandez is involved in any bribery. The case agent testified that there was no evidence. It went a little bit further and said he was not involved. In the summation, the prosecutor said he's not involved, and in rebuttal in a portion that I unfortunately did not cite in my brief, the prosecutor in his rebuttal, the last thing that he said in this case, he said that Mr. Fernandez was not involved in the bribery. Bear with me for a moment. Okay. Tell us about the sentence. Judge Barry has some questions. You say at page 78 of your brief that you sought the adjustment, the 3C1.1 adjustment, based on A, one specific lie of Fernandez's claimed lack of knowledge about his phone call to Rivera. You called it at sentencing the clearest example of an out-and-out lie. I mean, that was it. That was the basis of the obstruction enhancement, correct? Yes. And application note 7 says that the adjustment is not to be applied to an offense level in a perjury prosecution, unless there is a significant further obstruction that occurred during the prosecution. And the commission uses as an example the threatening of a witness during the course of the perjury trial. I mean, that's serious stuff. We're not talking about bupkis. We're talking about a significant further obstruction. So even if one more lie is a significant further obstruction, and I have some difficulty on that, the district court, and you kept asking over and over, wasn't giving you what you wanted, or, I suggest, what you needed. I mean, she said a couple of times, well, the adjustment is applicable. But you needed more than that, and you knew it, and you went back in. And finally, I mean, she said, well, he didn't tell the truth. But she wasn't talking about that specific lie. She just talked generally. And finally, at the bail application, you went in for one last time and said, effectively, please, judge, put the reasons on the record. And she says at 968, quote, with regard to the obstruction of justice enhancement, I believe it was warranted. I listened to this defendant testify, and he didn't tell the truth. I cannot reject the jury's finding because it seems to me to have been reasonable based on the evidence. I wonder, I'm asking the question, I wonder, is that a finding of significant further obstruction? And let me add also that the jury acquitted him of obstruction of justice. And convicted him of perjury. Yeah, but we're talking about an obstruction of justice enhancement to his sentence. What about one more lie, just one more lie? Your Honor, there were lies in front of the grand jury. That got him convicted of perjury. And then the defendant went in front of the pettit jury, and he lied again. And he lied repeatedly. And, Your Honor, well, we cited one. No, no, no, no. I was very specific in my question. I know my records. A lie was what you said. This one lie is the evidence you need. I think the prosecutor said that it was the most obvious lie and the clearest lie. The prosecutor said, quote, this is the clearest example of an out-and-out lie. And in your brief, you base the adjustment request on a specific lie. So, I mean, maybe there were others, but you weren't basing the adjustment on them. And Judge Thompson, I have enormous respect for her, but she never gave you that finding, that that lie was a significant further obstruction. Or an explanation on the record, which is what is required for us. Can I? Yes, you can look at that. Go ahead. This is page 946 of the appendix. 946? Yes. And I'm sorry, page 945 into 946. The prosecutor did have to prompt Judge Thompson to make the specific finding. But prompt her he did, and respond she did. And she found all the elements of the enhancement. She said that the question was, with respect to the obstruction enhancement, did the court find by preponderance that the defendant's testimony trial constituted false testimony? Absolutely. Concerning a material matter with willful intent to provide false testimony. I would submit. Yeah, but the last question where she said yes, I believe the defendant took the position he took early on and could not bring himself to waver from it. Position on what? You know, it's very vague. It reads to me as if she's talking about his testimony at trial, the broad testimony, the whole testimony. But, Your Honor, let me say that, although I think she did make the specific finding, this court has said on at least a couple of occasions, that when the jury's verdict is irreconcilable with the defense testimony, that there isn't much of a specific finding that's needed. Done again, the Supreme Court case was the case that first talked about specific findings, and the Supreme Court said, we recommend that specific findings be made. And this court in Bogie, which is cited in my case, and in another case, which unfortunately is not cited, Gricko, which is at 277 F. 3rd, 339, that's a 2002 decision of this court, the court said that where there is an irreconcilable inconsistency between the jury's verdict and the defendant's testimony, the need for specific findings. But what's the irreconcilable? It was irreconcilable for the jury to convict Mr. Fernandez of knowingly giving false testimony in front of the grand jury, and his testimony, and he did not testify falsely. What about the call to Rivera? All he said was, I don't recall. He said the testimony, he said he was shown the phone records. He said, I really don't recall that. Let me back up for a moment, Your Honor. At the end of that March 22nd phone call where Soto says, okay, we're going to vote down B&B, and Mr. Fernandez says, okay, I'll call Sammy right now, hangs up the phone, picks up the phone five seconds later, calls Rivera. He's asked, after being shown that phone record, wasn't that call about the insurance matters? And Mr. Fernandez's response was, it could have been about anything. Now, Judge Thompson clearly could have inferred based on that call. That's a significant further obstruction, right? Yes. And why did the jury acquit him of obstruction of justice? Your Honor, we didn't call the jury afterwards. We don't know why. Well, but, I mean, that's on the record. I mean, so you have an acquittal of obstruction of justice and an enhancement for obstruction of justice. Isn't there something unfair about that? Let's talk about fairness. Your Honor, there are two different burdens of proof, as the Supreme Court has recognized, for conviction beyond a reasonable doubt and for an enhancement which must merely be by a preponderance of the evidence. So that's one reason why Judge Thompson was allowed to find obstruction. Mr. Gross, Mr. Fernandez is in jail now. He's there. How much to his sentence did the enhancement add? The enhancement increased the offense level two levels, and then Judge Thompson granted a downward variance. So she actually sentenced him within the range that would have applied, but for the enhancement. Yeah, but if we were to take away the enhancement, can we figure out how much less of a jail term? Would he be out of jail now? No, I don't think so. I believe he's in jail until May. He went in in January. Yeah, I think he's in jail until May. But I think if you reversed in this case, Your Honor, what you'd have to do would be to send it back to Judge Thompson. Now, if you reversed on the ground that she didn't make a sufficient finding, I would submit that she has an opportunity on remand to expand the record and explain the basis for that enhancement. Or if we can't find evidence sufficient to sustain the enhancement. Right. If you find on this record that there is, but I think that would be very hard to do, Judge Slover, considering the many, many lies. No, no, no, no, no. The enhancement was based on one lie, as to Rivera. That's what you said at trial to Judge Thompson, and that's what you tell us. Well, I understand Your Honor's point. I thought it was an example. I see my time is almost up. I just want to make one more point quickly. It will probably take me over the time limit here. But it has to do with the ambiguity and this notion that if any of the statements were ambiguous, you have to throw out the conviction. That's simply not the law. Under Griffin v. United States, you've got a single count, multiple theories. If Your Honor's found that any one of these statements was fundamentally ambiguous and should have been taken from the jury, as long as there's sufficient evidence that there was a meeting of the minds between the grand jury prosecutor and Mr. Fernandez when he testified, and he testified falsely, then you should affirm the conviction and you should affirm the determination that there should have been a dismissal. Thank you. Thank you, Mr. Gross. Mr. Harvis. Thank you. Your Honor, Mr. Fernandez is indeed serving his sentence of 18 months, and he started in January. I'd like to pick up on one thing Judge Barry raised because I think it's very important, and that is that not only did the government premise the obstruction enhancement at sentencing on the lie about talking to Rivera, but if you look carefully at the closing argument by the prosecutor, he premised the entire obstruction of justice on that very same lie. So the jury acquitted him on that theory that the prosecutor premised, yet the prosecutor then said, well, he obstructed and he was entitled to an enhancement based on the conduct that the jury acquitted him on, and there's no specific findings by Judge Thompson that that indeed was a lie, and more importantly, there is no finding that that is a significant further obstruction. So I would submit to the Court that the analysis here is. She says she accepts the jury's verdict. And that's. If you're correct about the summation, the jury's verdict was not guilty on that count. That's correct. And I think it's just this general feeling that, well, the jury must have found that he lied, and therefore I'm going to impose the enhancement, and I don't believe that is correct under the law because I think under Application Note 7, there has to be something more than just the jury's verdict on the record that the Court can point to. But how do you get around bogey where we said express separate findings are not required? I think we deal with that issue is not only there was no findings, but the findings here are inconsistent, as Judge Barry just pointed out. The finding was that he lied, but where we said express separate findings are not required seems to suggest that we have the ability to mine the record to see if there were additional lies. I think you probably have that ability, but the problem here is there are no findings and they're internally inconsistent because the jury acquitted on the lie to Rivera, and the government sought that enhancement, but the Court never made a finding on that precise issue. It was just this general feeling that he lied. What do we do with the fact, though, that she gave a downward departure? I think that's irrelevant. The sentence is based upon an incorrect calculation of the guidelines, and therefore at a minimum the case has to be remanded. I'd like to go back to one other question Judge Barry had about the significance of the phone call, the tapes of Rivera, Soto, and Jackson, all discussing and setting up Mr. Fernandez within hours of that critical phone call that he had with That was indeed the culmination of the plan. That call is so important because it establishes lack of motive. It rebuts not only the friendship theory. Let me know what you're talking about now. You're talking about the exclusion of that phone call. The tape recording. Yeah, go ahead. It's so important because this case was so charged with political corruption because of hearing about the bribes of Rivera, Jackson, and Soto. It was so critical to have Mr. Fernandez distance himself and have affirmative proof in the record that he wasn't aware of this bribery scheme, he wasn't part of this bribery scheme, and he needed that corroboration, and it's right in the mouths of the co-conspirators on the same day as the critical tape recording, and the court didn't allow it. The government never conceded it, as Judge Barry pointed out. The government could have stipulated. They could have offered a stipulation. I think that was somebody else. I think that was Judge Sloan. I'm sorry. They could have stipulated in front of the jury, we agree that Mr. Fernandez was not aware of and had no knowledge of this bribery conspiracy, but they didn't do it, and as I pointed out in my original Well, they said it, though. They didn't say they weren't charging him. You have to concede at the end of the day this was a perjury case, not a bribery case. I agree, but motive in any case is critical, especially in this case. Why did he lie in the green jury? And if he didn't know of the bribes, and he wasn't a close political ally in close friends. But he still lied. I mean, he still said, I mean, if you accept the jury's verdict, he still said no to all, to those four questions, which, frankly, I don't think were ambiguous at all. I understand the court's position, and I'm not going to argue that now. I think the critical piece of evidence here were these tape recordings that the court didn't let in because she said they were irrelevant and hearsay. First of all, under any reading of relevance, they're relevant, and I submit to the Well, they weren't relevant to his. They really were not relevant to the charge on which he was tried. It's relevant to his motive. Which was lying to the grand jury. Right. It's relevant to his motive, and as all your honors are aware, motive in any criminal case is important, and proof of motive is always initial. What you're saying is the jury would have thought he's not such a bad guy. You can argue that, and that's not necessarily nullification, but it goes to lack of motive. Why would I protect these guys by lying? And that, in my view, is the crucial pieces of evidence that were not allowed in. And then the final thing I'll say is the lack of the instruction of knowingly. Oh, no. Yeah, but she said you can apply it from the one before. Well, I think if you go back. We don't have a rule that says you need to give the same instruction over and over for every count. She clearly incorporated. I understand, but if you go back, you keep saying it was the instruction attached to the second count, but it really wasn't because she says later on in the bail or wherever it was. Well, if I went back. That this was my closing instructions as a, you know, big conclusion. I went back and looked at that this morning. The jury could use that instruction in considering the false statement, Judge. Your red light has been on, and we've been very generous. Thank you very much, your honors. We have another case this afternoon. I appreciate the court's consideration. Okay. Thank you.